IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54317-6-II |
| Respondent, | |
| v. | |
| K.D.P., | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — KDP appeals his adjudication of guilt for second degree assault. KDP argues that the juvenile court's findings of fact and conclusions of law are not supported by substantial evidence. KDP also argues there is insufficient evidence to support the juvenile court's adjudication of guilt. We affirm.

FACTS

In early September of 2018, KDP, who was 15 years old, went to a Walmart parking lot in Battleground. KDP told DS's friends that he wanted to fight DS.[1] DS's friends called him and told him to come to the Walmart, and he arrived 45 minutes later. Before DS arrived, KDP went inside the Walmart and got a 3.25-inch folding hunting knife, intending to use it against DS if necessary. DS arrived, found KDP in the parking lot, and asked KDP if he still wanted to fight, and KDP said yes. DS threw the first punch, but there were multiple breaks in the fight, and KDP continually re-engaged with DS. Toward the end of the fight, KDP pulled out the

---

[1] We use initials instead of names for all minors mentioned herein.

hunting knife and cut DS's torso with it. The cut was approximately six inches long and several inches deep, cutting through multiple layers of DS's body and cutting one of his rib bones. DS was rushed to the hospital. KDP tried to flee but was detained by DS's friends until police arrived and arrested KDP. The State charged KDP with assault in the first degree.

At trial, the State elicited testimony that KDP and two of his friends arrived at the Walmart parking lot, which was a common "hangout spot." 2 Verbatim Report of Proceedings (VRP) at 148. Witness SJN testified that KDP approached him and his friends telling them, "'Me and my friends are gonna fight [DS] and his friends.'" 2 VRP at 119. SJN called DS and told him someone was looking to fight him. At some point, KDP went into the Walmart. Witness CF testified that he saw KDP exit the Walmart and walk to the corner of the parking lot to wait with his friends for DS. DS arrived at the Walmart 45 minutes later.

DS and CF testified that when DS arrived, DS approached KDP and asked, "'Do you really want to [fight]?'" 2 VRP at 155, 195. KDP said yes, then DS threw the first punch. At least 15 people watched the fight. Some of them were DS's friends and others were KDP's friends. During the fight, DS landed several punches and had KDP in a head lock. ET, who was one of KDP's friends, recorded a portion of the fight on his phone. In the video recording, ET can be heard stating, "'Let's go, [KDP],'" and let the fight be "'one-on-one for now.'" 4 VRP at 538, 671. More bystanders can then be heard cheering, "'Go, [KDP]. Come on, [KDP].'" 4 VRP at 575.

The video also showed that KDP was not completely surrounded by DS's friends or backed up against a fence. Both KDP and DS, as well as several witnesses, SJN, SN, and RS, testified that throughout the fight KDP and DS took multiple breaks, but KDP would reengage.

SJN, DS, and RK testified that KDP eventually pulled the knife out of his pocket and stabbed DS in the abdomen. DS's friends rushed him to hospital. KDP tried to run away, but DS's friends detained him. *See* 2 VRP at 108-10.

KDP's testimony differed from some of the above-stated facts. KDP testified that when he learned that DS was on his way to the Walmart, KDP became afraid and went into the Walmart to hide. KDP also testified that his phone was dead so he could not call anyone for help, and that he did not have his own car to leave. However, KDP admitted on cross examination that he did not ask to borrow anyone's phone or ask for a ride to leave. After spending some time hiding, KDP decided to get a knife so he could safely return to his friend's car to leave. He obtained a knife from the Walmart, left the store, removed the knife from its packaging, and then put the knife in his pocket. As KDP was nearing his friend's car, DS attacked him. KDP said he did not want to fight DS. KDP testified that DS's friends surrounded him and that he was backed up against a fence with nowhere to go. During the fight, KDP pulled out the knife to try and stop the fight from continuing. But DS lunged at him. KDP did not remember stabbing DS with the knife.

In his closing argument, KDP argued that he lacked the intent to inflict great bodily harm and that the State could not prove beyond a reasonable doubt that KDP had not acted in self-defense. The juvenile court found DS's testimony credible, but did not find KDP's testimony credible. The juvenile court entered findings of fact and conclusions of law, concluded that KDP had assaulted DS with a deadly weapon, and that the State disproved self-defense beyond a reasonable doubt. The juvenile court adjudicated KDP guilty of second degree assault. KDP appeals.

ANALYSIS

KDP argues that the juvenile court's findings of fact and conclusions of law are not supported by substantial evidence. KDP also argues that the juvenile court's adjudication of guilt for second degree assault is not supported by the findings of fact. We disagree.

I. SUBSTANTIAL EVIDENCE: CHALLENGED FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    *Standard of Review*

Our review is limited to determining whether the juvenile court's findings are supported by substantial evidence and, "if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "Substantial evidence is evidence sufficient to persuade a fair minded, rational person of the finding's truth." *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). We treat any unchallenged findings of fact as verities on appeal, and review any conclusions of law de novo. *Homan*, 181 Wn.2d at 106; *Stevenson*, 128 Wn. App. at 193. We view the evidence in the light most favorable to the State. *Homan*, 181 Wn.2d at 105. And we "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

B.    *The Findings of Fact are Supported by Substantial Evidence*

KDP assigns errors to findings of fact 5, 6, 8, and 13, arguing that the State failed to produce substantial evidence to support those findings. [2] We disagree.

---

[2] Although he failed to assign error to finding 5, KDP argues that the juvenile court erred by entering this finding of fact. Because KDP's brief adequately points out his disagreement with the finding, we consider his argument. *In re Marriage of Wayt*, 63 Wn. App. 510, 513, 820 P.2d 519 (1991).

KDP argues insufficient evidence supports finding 5 which states: "It took approximately forty to forty-five minutes for [DS] to arrive. [KDP] had time to leave before the fight began or call someone to pick him up. Instead [KDP] went inside of the Walmart and got a knife. It was a 3.25 inch folding hunting knife." Clerk's Papers (CP) at 162.

KDP appears to argue that there is insufficient evidence to support finding 5 because KDP testified to the contrary. But we view all evidence and inferences in the light most favorable to the State. KDP does not contest that it took DS approximately forty-five minutes to arrive, nor does he contest obtaining the knife or the description of the knife. He argues only that he did not know how long it would take for DS to arrive, and that he worried DS had already arrived at the Walmart. However, on cross-examination, KDP admitted that he did not actually ask any Walmart employees for help. Before going into the Walmart, he also did not ask his friends to borrow their phones, or for a ride to leave. Therefore, the contested portion of juvenile court's finding of fact 5, finding that KDP had time to leave or call for help, is supported by substantial evidence.

KDP also assigns error to finding 6 which states: "[KDP] had the knife and intended to use it in case the fight did not go the way he wanted it to go." CP at 162.

KDP cites to his own testimony to argue that he grabbed a knife only so he could safely return to his friend's car. But witness SJN testified that KDP arrived at the Walmart parking lot looking for DS to start a fight. KDP admitted going into the Walmart to obtain a knife. Witness CF testified that he saw KDP walk out of the Walmart to wait on the corner with his friends. 2 VRP at 153-54. Viewing the evidence in the light most favorable to the State, substantial

evidence supports the juvenile court's finding that KDP obtained a knife in preparation for the fight.

Next, KDP assigns error to finding 8, which states: "[DS] arrived, got out of the vehicle, asked [KDP] if he still wanted to fight, and then threw the first punch. The fight began." CP at 162.

DS testified that when he and KDP were face to face he asked KDP, "'Do you really want to do this?'" 2 VRP at 195. Witness CF also testified he heard DS ask if KDP really wanted to fight, and KDP said yes. 2 VRP at 155. We do not review a trial court's credibility determinations. *Thomas*, 150 Wn.2d at 874-75. Based on DS's and CF's testimony, there is substantial evidence to support the finding. Thus, because the juvenile court found this testimony to be credible, finding of fact 8 is supported by substantial evidence.

Finally, KDP assigns error to finding 13, which states:

[KDP] was encouraged to fight by his friends. Specifically, [ET] could be heard on one of the videos stating 'go, [KDP]' and announcing that it was a one on one fight, 'for now.' His voice on the video lends credence to testimony from other witnesses that this was a mutual fight.

CP at 162-63.

The trial court admitted a video that witness ET recorded on his phone. In the video recording, ET shouted, "'Let's go, [KDP],'" and that the bystanders should let the fight be "'one on one for now.'" 3 VRP at 538; 4 VRP at 574-75, 671. Multiple people in the video were also cheering, "'Go, [KDP]. Come on, [KDP].'" 4 VRP at 575. KDP argues that these cheers do not support a finding that the fight was mutual. However, the juvenile court's finding was not that those statements alone supported that the fight was mutual, but that those statements lend credence to other witness testimony that the fight was mutual. SJN testified that KDP planned

6

the fight because KDP approached them declaring, "'Me and my friends are gonna fight [DS] and his friends.'" 2 VRP at 119. We therefore hold that finding 13 is supported by substantial evidence.

KDP did not challenge the juvenile court's remaining findings of fact. Thus, they are verities on appeal. *Homan*, 181 Wn.2d at 106.

C.      *The Conclusions of Law are Supported by Findings of Fact.*

KDP argues that the juvenile court's conclusions of law 2, 3, 3(a)-(d) and 10 are not supported by the findings. We disagree.

As an initial matter, the juvenile court mislabeled conclusion of law 3(a). This conclusion is more appropriately labeled a finding of fact. When a finding of fact is "erroneously described as a conclusion of law," we review it as a finding of fact and determine whether there is substantial evidence to support the finding. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Conclusion of law 3(a) states: "Looking at the entirety of the circumstances, [KDP] was preparing for the fight before the victim arrived by getting a knife, taking it out of its packaging, and hiding it on his person. He did not pull it out before the fight began to deter the fight from happening." CP at 164.

SJN testified that KDP arrived at the Walmart looking for DS to fight. KDP testified that he went into the Walmart, obtained the knife, removed it from the packaging, and hid it in his pocket. CF testified that he saw KDP leave the Walmart and wait at the corner with his friends. DS testified that when he arrived and asked KDP if he still wanted to fight, KDP said yes. Therefore, there is substantial evidence to support this finding that KDP got a knife to prepare for the fight and did not pull the knife out to deter the fight from happening.

i. *Mutual Fight*

KDP assigns error to conclusion of law 2. This conclusion of law is also more appropriately labeled a finding of fact. We therefore review to determine whether substantial evidence supports the finding. *Willener*, 107 Wn.2d at 394. In conclusion of law 2, the juvenile court stated, "Based on the testimony provided and the videos, this was an agreed, mutual fight." CP at 164.

KDP cites to the evidence at trial to argue that DS did not agree to the fistfight and that KDP was leaving when DS hit him. But, as explained in section B above where we analyze finding of fact 8, the substantial evidence supports that KDP agreed to the fight. DS asked KDP, "'Do you really want to do this?'" 2 VRP at 195. KDP said yes. Accordingly, the juvenile court's conclusion that KDP and DS agreed to the fight is supported by substantial evidence.

ii. *Self-Defense*

Next, KDP assigns error to conclusion of law 3 and 3(b)-(d). The juvenile court concluded:

3. Self-Defense is not available to [KDP]. The State disproved self-defense beyond a reasonable doubt.

. . .

3(b) Moreover, [KDP] used far too much force than was reasonably necessary in these circumstances.

3(c) The State disproved that [KDP] was fearful of great personal injury. Looking at the circumstances most favorably to [KDP], the Court concludes that it was not reasonable that [KDP] reasonably believed that he would have severe pain and suffering unless he used that knife.

3(d) Taking into account the subjective and objective tests, it is not something a reasonably prudent person would do under the same or similar circumstances.

CP at 164.

When a defendant raises a self-defense claim, the defendant must first offer credible evidence tending to prove that "'he or she had a good faith belief in the necessity of force and that that belief was objectively reasonable.'" *State v. Graves*, 97 Wn. App. 55, 62, 982 P.2d 627 (1999) (quoting *State v. Dyson*, 90 Wn. App. 433, 438-39, 952 P.2d 1097 (1997)). The burden then shifts to the State to disprove self-defense beyond a reasonable doubt. *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020). When evaluating the sufficiency of the evidence of self-defense, we must determine what a reasonably prudent person would do if standing in the defendant's shoes. *State v. Werner*, 170 Wn.2d 333, 337, 241 P.3d 410 (2010). This approach includes both an objective and a subjective test. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997).

The subjective test requires the court to "place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred." *State v. Read*, 147 Wn.2d 238, 243, 53 P.3d 26 (2002). The objective test requires the court to "determine what a reasonable person would have done if placed in defendant's situation." *Read*, 147 Wn.2d at 243. Accordingly, the amount of force used in self-defense is based on what a reasonably prudent person would find necessary "under the conditions as they appeared to the defendant." *Walden*, 131 Wn.2d at 474.

Here, the findings of fact support these conclusions of law. The court found that KDP told DS's friends he wanted to fight DS. KDP waited for DS to arrive and did not attempt to leave or call anyone for help. While he waited, KDP went into the Walmart to obtain the knife. He removed the knife from its packaging and hid it in his pocket "in case the fight did not go the way he wanted it to go." CP at 162, 164. When DS arrived, KDP confirmed he still wanted to

9

fight. DS punched KDP several times. Throughout the fight, KDP's friends cheered him on. There were multiple breaks in the fighting and KDP continually re-engaged with DS. Only toward the end of the fight did KDP pull out the knife to stab DS. Under these circumstances, standing in KDP's shoes, a reasonable person would not have used the knife to stab DS. Accordingly, the findings support that using the knife during the fistfight was more force than was reasonably necessary because KDP did not have a good faith belief in the necessity of force.

KDP relies on *Callahan*, 87 Wn. App. 925, 928, 943 P.2d 676 (1997), to argue that he was subjectively and objectively reasonable in his actions. In *Callahan*, while driving to work, Callahan got into a heated exchange with another driver who cut in front of him. 87 Wn. App. at 928. When they pulled over into a parking lot, the other driver exited the vehicle with two other passengers. *Callahan*, 87 Wn. App. at 928. Callahan, outnumbered and afraid for his safety, pulled out a handgun to de-escalate the situation. *Callahan*, 87 Wn. App. at 928. Callahan cocked the gun, the other driver moved to grab the gun, then the gun discharged into the other driver's hand. *Callahan*, 87 Wn. App. at 928. The court held that a self-defense jury instruction is permitted when the evidence shows "the defendant had a reasonable fear of the victim, intentionally pointed the gun at the victim, used a reasonable amount of force, and was not the aggressor." *Callahan*, 87 Wn. App. at 928.

KDP argues that like the defendant in *Callahan*, KDP pulled out the knife and stabbed DS because he feared for his safety. He argues his fear was reasonable because he was surrounded by DS's friends, backed up to a fence, and punched in the head numerous times. Also like the defendant in *Callahan*, KDP argues that he pulled out the knife to de-escalate the situation and used a reasonable amount of force to protect himself. He also argues that he was

10

not the first aggressor.  But KDP's reliance on *Callahan* is misplaced because the *Callahan* court was deciding whether a self-defense jury instruction is available to a defendant who intentionally displays a gun but then accidentally fires it; the court was not deciding whether the findings of fact supported conclusions of law.  87 Wn. App. at 927-29.

We hold that the findings of fact support the juvenile court's conclusion that the State disproved self-defense beyond a reasonable doubt.

### iii.  *Adjudication of Guilt*

Finally, KDP assigns error to conclusion of law 10, which states:  "The State has proven beyond a reasonable doubt that [KDP] is guilty of the crime: Assault in the Second Degree."  Br. of Appellant at 3-4; CP at 165.  Although KDP assigns error to this conclusion, the portion of his brief addressing this issue is argued as a general sufficiency of the evidence argument, wherein KDP argues that based on the evidence at trial, the State failed to prove the absence of self-defense. We hold that the findings support conclusion of law 10.

KDP does not dispute the court's conclusion that he assaulted DS with a deadly weapon that resulted in great bodily harm.[3]  Instead, as explained above, KDP relies on *Callahan*, 87 Wn. App. at 928, and his own testimony to argue that he was subjectively and objectively reasonable in his actions.

KDP's reliance on *Callahan* is misplaced for two reasons.  First, as explained above, the court in *Callahan* was deciding whether a self-defense jury instruction is available to a defendant

---

[3] KDP does not assign error to conclusion of law 4, which concluded, "When [KDP] cut [DS] with the knife, it was an assault," or conclusion of law 9, which concluded, "[KDP] did not intend great bodily harm.  [KDP] intentionally assaulted [DS] and recklessly inflicted great bodily harm.  [KDP] was also armed with a deadly weapon during the commission of the assault."  CP at 164-65.

11

who intentionally displays a gun but accidentally fires it, not whether the findings of fact supported the conclusions of law. 87 Wn. App. at 927-29. Second, KDP appears to base his argument entirely on his own testimony, which the juvenile court determined was not credible. *Compare* Br. of Appellant at 15-18 *and* CP at 164.

Thus, as explained in Part I, substantial evidence supports the juvenile court's conclusion that the State disproved self-defense beyond a reasonable doubt. Therefore, the findings of fact and conclusions of law support the adjudication. KDP's argument fails.

CONCLUSION

We hold that the juvenile court's findings were supported by substantial evidence and that its conclusions of law were supported by the findings of fact. Accordingly, we affirm KDP's conviction for second degree assault.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, C.J.

Glasgow, J.

12